PHOENIX ASSURANCE COMPANY, LIMITED, v. LUDWIG.

Opinion delivered October 12, 1908.

FOREIGN CORPORATIONS—WITHDRAWAL—TERMS OF RE-ENTRY.—When a foreign corporation wholly withdraws its business from the State and ceases to do business and to comply with the laws of the State with reference to foreign companies doing business in the State, it will be held to have withdrawn from the State; and if it desires to re-enter, it will be required to comply with the terms of the act of May 13, 1907.

Appeal from Pulaski Circuit Court, Second Division; *Edward W. Winfield,* Judge; affirmed.

*Campbell & Stevenson,* for appellant.

1. A foreign corporation duly admitted to the State prior to the passage of the Wingo Act, the corporate rights of which have not been terminated in any legal manner, is not amenable to the fee provisions of section 3 of that act. Such a corporation, once duly admitted and enfranchised by the State, in respect to subsequent legislation, stands upon a footing of equality with like domestic corporations, and is not bound by a law which is not equally applicable to them. Art 12, § 11, Const.; 204 U. S. 105; 156 Fed. 152.

2. Appellant, at the time of the passage of the act, was duly admitted to the State under existing laws governing the admission of foreign insurance corporations, and its corporate rights and existence in the State had never been terminated. (a) At the time of its admission to the State and until the time it suspended active insurance business in the State, appellant complied with all existing and applicable laws for the entry and enfranchisement of foreign insurance corporations. The State therefore became bound to it, as by contract, that it would not discriminate against it in favor of domestic corporations. The duties and rights of insurance companies and the regulation of insurance business had been made the subject of legislative classification and control, prior to appellant's entry. Review Sandels & Hill's Dig., chap. 88, being acts April 25, 1873, Feb. 27, 1875, March 26, 1887, and March 6, 1891, and contend that, by complying with the entry statutes in 1896 and 1899, appellant made a contract with the State, and that, unless it had forfeited or surrendered its rights thereunder, they existed when the Wingo act was passed. (b) Appellant did not forfeit its right to exist and its franchise as such corporation by the mere failure during the time of suspension of business to comply with the statutes imposing certain annual duties upon all insurance companies engaged in the active conduct of insurance business in the State. These are conditions upon the active conduct of insurance business in the State, and have no reference to the corporate existence of a company. (c) Appellant did not by its letter of March 23, 1905, surrender its corporate existence, nor lose same by mere nonuser from that time until 1907, no action having been taken in the meantime by the State to forfeit its corporate existence. 204 U. S. 103; 156 Fed. 152; 56 S. E.

983. Mere suspension or cessation for a time from business by a corporation does not work a forfeiture of its franchises or an *ipso facto* dissolution; and while nonuser is a ground for proceeding by the State to forfeit the corporate existence, affirmative action by the State is necessary. 2 Cook, Corp. § 630; *id.* § 632; 31 Ark. 476; 5 Ark. 595; 20 Ark. 204; 36 Ark. 178; 2 Clark & Marshall on Corp. § § 307, 308; 15 Pick. 351; 10 Col. 464; 3 Dess. (S. C.) 557; 27 Miss. 517; 9 N. J Eq. 401. The statutes of the State confer no power on the Auditor to cancel or revoke the rights of a corporation. Kirby's Dig. § 4330. In the absence of a statute authorizing it, neither the Auditor nor any other executive officer could annul appellant's corporate rights. Hence the Auditor's notation made on receipt of appellant's letter did not have that effect.

*William F. Kirby,* Attorney General, and *Dan'l Taylor,* assistant, for appellee.

The Constitution says: "Foreign corporations may be *authorized to do business* in this State, under such limitations and restrictions as may be prescribed by law," etc. This is equivalent to providing that they shall not be permitted to enter the State for any other purpose than to transact business. It was never intended that a foreign corporation should be admitted for the sole purpose of "existing" in the State. The contract with the State was that the company should be allowed to enter and transact business as a foreign corporation. Recognition of its corporate existence was merely incidental to and included in the right granted to transact business. Suspension of business, if persisted in and continued for a time sufficient to indicate that it is its intention to surrender its rights, would amount to a termination of its authority to transact business in the State. 10 Cyc. 1299, 1300, 1301. When legal cause exists, the Auditor is impowered to revoke the right of an insurance company, whether foreign or domestic, to transact business here. Kirby's Dig. § 4327. Nonuser is legal ground for revocation. When the Auditor, on receipt of appellant's letter, cancelled the right of appellant, making a record of the cancellation by noting on the insurance register, opposite appellant's name, "to cease business in State March 22, 1905," this was the legal termination

of its right to exist and do business here.   10 Cyc. 1287, and
cases cited.   At any rate, the writing and sending the letter and
telegram was a voluntary surrender of these rights, and there
is no reason why the State should formally accept the surrender.
19 Cyc. 1346, 1347.

McCulloch, J. Appellant is a foreign insurance corpora-
tion, and, prior to March 23, 1905, entered this State for the
purpose of operating its insurance business herein.   It fully com-
plied with the laws of the State, established agencies through-
out the State, and continued the operation of its business up to
the above mentioned date, when it ceased to transact business.
On that date its manager in the city of New York notified the
Auditor of the State of Arkansas in writing that its agents had
been instructed "to cease at once from transacting business in
the State," and the Auditor immediately made an indorsement
on his records to the effect that appellant company had ceased
to do business in the State.

The General Assembly enacted a statute approved May 13,
1907, known as the Wingo Act, requiring that every foreign cor-
poration, including railroad and insurance companies, before
doing business in the State, shall file in the office of the Secre-
tary of State a copy of its charter or articles of incorporation,
etc., together with a statement of its assets, liabilities, capital
stock, etc., and a certificate designating its place of business in the
State and an agent upon whom process may be served.

The third section of the act also provides that "all corpora-
tions hereafter incorporated in this State and all foreign corpora-
tions seeking to do business in this State shall pay into the treas-
ury of this State for the filing of articles a fee of $25 where
the capital stock is $50,000 or under; $75 where the capital
stock is over $50,000 and not more than $100,000; and $25 addi-
tional for each $100,000 of capital stock."

Subsequently, appellant company made tender to the Secre-
tary of State of compliance with all the provisions of the Wingo
Act, except that of payment of the fee, and claimed the right
to resume business in the State without paying the fee.   This
claim was denied by the Secretary of State, and this action was
instituted in the circiut court of Pulaski County to compel him,
by mandamus, to accept and file the copy of charter and certifi-

cates, etc., tendered to him by appellant, without requiring payment of said fee, and to issue to appellant a certificate thereof.

The position assumed by appellant's counsel in support of the claim that their client's exemption from payment of the fee is, (1) that a foreign corporation which was admitted into the State prior to the passage of the Wingo Act, and whose domestic rights have not been legally terminated, cannot be required to pay the prescribed fee; and (2) that appellant's corporate rights and legal existence in the State had never been terminated, but that its legal existence in the State was still preserved.

We do not deem it necessary to express an opinion as to the first contention of counsel, for we have reached the conclusion that appellant had, prior to the passage of the Wingo Act, voluntarily withdrawn from the State, relinquished whatever domestic rights it possessed, so far as its right to transact business was concerned, and that, in order to come into the State again for the purpose of doing business, it is amenable to all the requirements of the new statute, including payment of the prescribed fee.

It is argued by counsel with much earnestness that there is a difference between suspension of active business operations in the State by a foreign corporation, and the complete extinction of its legal existence here. This difference is, we think, more theoretical than real, for a foreign corporation is admitted into the State only to transact business. Art. 12, § 11, Const. 1874. It does not by such admission become a domestic corporation, nor acquire a permanent domicil in the State like a domestic corporation. 19 Cyc. p. 1206; *Liverpool Ins. Co.* v. *Board of Assessors*, 44 La. Ann. 760; *St. Louis & S. F. Ry. Co.* v. *James*, 161 U. S. 545; *Wilson* v. *Ry. Co.* 64 S. C. 162.

It has no other tangible existence except in the maintenance of its place of business and the transaction of business, and when it ceases to perform those functions it has ceased to exist in the State. In this respect it is easily distinguishable from a domestic corporation, and the same rules for determining its continued existence do not apply.

We do not mean to say that a mere temporary cessation of business would necessarily operate as a complete withdrawal from the State, but we hold that where a foreign corporation

ceases definitely to maintain its place or places of business and its agents in the State and to transact business here, its legal existence here is terminated.

Moreover, there are certain annual duties required of foreign insurance corporations by the statutes of this State in order to continue their legal existence in the State after having been duly admitted, which appellant failed to do. These statutes were in force when appellant originally came into the State, and it is not contended that it has complied with them after it ceased to do business in 1905.

These omissions of annual duties are set forth in the agreed statement of facts, as follows:

"(b) That it did not transmit to the Auditor of State the statement required by section 4337 of Kirby's Digest.

"(c) That it did not file with the Auditor of State the statement required by section 4338 of Kirby's Digest, and did not pay into the State treasury the tax therein stipulated on its net receipts except for the year 1905.

"(d) That it did not give the bond required by section 4339 of Kirby's Digest.

"(e) That it did not certify to the Auditor of State the names of agents appointed by it to solicit risks and insurance policies or receive applications therefor as required by section 4363 of Kirby's Digest."

These omissions manifest, in the most unequivocal manner, an intention to completely withdraw from the State and from reach of its laws.

We are again met with the argument that these statutory requirements relate only to the transacting of business in the State, and not to the right of continued existence in the State— that, notwithstanding the failure of appellant to comply with the law and its discontinuance of business in the State, it maintained an opaque existence here which preserved its right to resume active operations at any time, with immunity from payment of an entrance fee. We do not, however, concur in this view, for, as already shown, when the foreign corporation wholly withdraws its business from the State and ceases to do business and ceases to comply with the laws of the State with reference thereto, it withdraws itself from the State and loses its legal

identity here except in so far as the statute restrains its departure while outstanding contracts made here remain unperformed.

The circuit court was right in refusing to issue the writ of mandamus, and his judgment is, therefore, affirmed.